HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDRES HERNANDEZ-VARGAS,<br><br>Defendant. | Case No. CR08-5775RBL<br><br>ORDER |

THIS MATTER comes on before the above-entitled Court upon Defendant's Motion to Suppress Evidence [Dkt. #31]. Having considered the entirety of the records and file herein, and having considered that an evidentiary hearing is not necessary to decide this motion, the Court finds and rules as follows:

**I. FACTS**

In mid-October, 2008 law enforcement officers received a tip from a reliable confidential informant that the defendant was making several trips a month to California to pick up methamphetamine. Based on this tip, on October 16, 2008, DEA Task Force Officer Dewey Burns placed a GPS tracking device on the defendant's 2007 GMC pickup truck. The informant had identified this truck as the one the defendant used, and King County Sheriff's Office Detective Aaron Thompson had previously observed the defendant driving this truck.

The data from the GPS tracking device showed that the defendant left around 8:00 a.m. on October 17, heading South on Interstate 5, and arrived at approximately 8:00 p.m. in North Highlands, California.

The data indicated that the defendant made another stop in Sacramento, California, at 10:15 p.m. and then headed North on Interstate 5. According to the informant, the defendant usually returned immediately after picking up drugs in California.

Around 9:15 a.m. on October 18 TFO Burns, Detective Thompson, and other law enforcement officers set up surveillance on Interstate 5 near Lacey, Washington. At approximately 9:40 a.m. officers observed the truck, with the defendant driving, heading North. King County Sheriff's Office Detective Ben Wheeler paced the defendant traveling at 70 mph in a 60 mph zone and stopped the truck. Detective Wheeler spoke to the defendant and asked him for his identification. According to the complaint, the defendant provided Detective Wheeler a driver's license with the name of J. Jesus Lopez. Detective Wheeler informed the defendant that he had information about drug trafficking along Interstate 5 and asked if he could search the truck for narcotics. Defendant consented to the search.[1]

ICE Special Agent Stephen Grumm arrived at the scene and questioned the defendant. SA Grumm determined that the defendant had provided a false identity to Detective Wheeler, and that the defendant actually was an illegal alien who had previously been deported. SA Grumm then arrested the defendant for illegal re-entry, handcuffed him and put him in a law enforcement vehicle. Detective Thompson drove the defendant's truck from the spot it was stopped to a nearby weigh station in order to safely search the vehicle.[2]

WSP Trooper Ronald Moss and his drug dog, Duke, arrived at the weigh station. Duke positively alerted to the presence of narcotics near the driver's side front fender. Detectives Thompson and Wheeler searched this area, but after an hour were unable to locate anything. Officers then transported the truck to the King County Sheriff's Office Precinct 4 secure parking lot in Burien, Washington.[3]

At the precinct, Detectives Thompson and Wheeler continued searching the truck. In the engine compartment under the dashboard, in an area accessed by removing the plastic covering under the

---

[1] Defendant denies he consented to the search of his vehicle; however, this fact is irrelevant to the Court's determination of the motion.

[2] It is unclear whether the defendant's truck was initially searched where it was stopped; however, for the purpose of this motion the Court will assume the truck was searched before it was moved to the weigh station.

[3] The officers were entitled to move the truck from the side of Interstate 5 to the weigh station, and then to the precinct, to safely search the truck. *Chambers v. Maroney*, 399 U.S. 42, 52 n.10 (1970).

windshield wipers the detectives discovered a brown paper bag with a plastic grocery bag inside it. Inside the bag was a substance which forensic testing determined to be 436 grams of actual methamphetamine.

The defendant was indicted and charged with possession of methamphetamine with the intent to distribute.

## II. DISCUSSION

The defendant moves to suppress the drugs found in the truck he was driving. He argues that the search cannot be justified as a lawful search incident to arrest, that he did not consent to the search, and even if he did consent, the search exceeded the scope of his consent. In the Court's view, however, the real issue is whether or not the officers had probable cause to search the defendant's truck.

Probable cause requires a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life, that contraband or evidence would be found in the place to be searched. *United States v. Perez*, 67 F.3d 1371, 1375 (9th Cir. 1995) (internal quotations omitted), *withdrawn in part on other grounds*, 116 F.3d 840 (1997). Once probable cause exists to believe a vehicle contains contraband and that vehicle is capable of being moved, officers may conduct a warrantless search of that vehicle. *California v. Carney*, 471 U.S. 386, 394-95 (1985).

According to Detective Wheeler's report, the informant was well known to him, and had proved accurate in the past. Information provided by the informant has led to the arrests and successful prosecutions in several felony cases. The informant told the officer that defendant traveled to California about twice a month to pick up methamphetamine. He said that the defendant was about to make the trip and on the evening of October 16, TFO Burns placed a GPS tracking device on defendant's truck.[4] The defendant left on the morning of the 17th and drove to California. The informant also told the officer that the defendant usually immediately returned to Washington after picking up the drugs. The data from the GPS device showed that defendant headed back North towards Washington that same evening.

At the time the defendant was stopped the officers had a tip from a known and reliable informant that the defendant was leaving soon for California and would return immediately to Washington with methamphetamine. The informant's tip about the logistics of the trip was independently corroborated by

---

[4] The defendant does not challenge the placement of the GPS tracking device on his truck, and the Ninth Circuit has held that the use of a tracking device does not implicate the Fourth Amendment because neither a search nor a seizure has occurred. *United States v. McIver*, 186 F.3d 1119, 1126-27 (9th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000).

the data from the GPS device. Based upon the information known to the officers when they stopped the truck, they had probable cause to search the vehicle.[5] *See United States v. Trejo-Zambrano*, 582 F.2d 460, 462-63 (9th Cir.) *cert. denied by Fierro Soza v. U.S.*, 439 U.S. 1005 (1978) (police received tip from a reliable source that defendant was transporting mairjuana that was corroborated when defendant's car arrived at a grocery store and was exchanged for another just as the informant predicted).

Because probable cause existed when the defendant was stopped, the Court need not address the issue of consent. *See United States v. Ibarra,* 345 F.3d 711, 716 n.6 (9th Cir. 2003) (because probable cause found to search vehicle, the issue of consent need not be addressed).

Defendant's Motion to Suppress Evidence [Dkt. #31] is **DENIED.**

**IT IS SO ORDERED.**

Dated this 11th day of March, 2009.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[5] The positive alert for the presence of narcotics by K9 Duke at the weigh station lends further evidence in support of the existence of probable cause for the search.